## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Docket No. 2:22-cr-00132-NT |
| | ) |
| MERIDETH C. NORRIS, D.O., | ) |
| | ) |
| Defendant. | ) |

### ORDER ON GOVERNMENT'S MOTION TO RECONSIDER

Before me is the Government's motion to reconsider my order granting the Defendant's motion for a *Franks* hearing. For the reasons stated below, the motion to reconsider (ECF No. 106) is **DENIED**.

### FACTUAL BACKGROUND

The Defendant, Merideth C. Norris, D.O., is a licensed medical doctor in Maine. Def.'s Mot. to Suppress for Violation of Fourth Amendment and for a "Franks" Hr'g ("***Franks* Mot.**") 2 (ECF No. 73). She has a solo practice in Kennebunk, Merideth C. Norris P.A., which does business as "Graceful Recovery" (the "**Practice**"). *Franks* Mot. 2.

On September 23, 2022, the Government made an *ex parte* application for a warrant authorizing the search and seizure of information such as patient records in Dr. Norris's account with her electronic medical records vendor, Elation Health, Inc. ("**Elation**"). *Franks* Mot. 1–2; App. for a Warrant (Docket No. 22-mj-166, ECF No. 1); Aff. in Supp. of Search Warrant ("**Elation Aff.**") (Docket No. 22-mj-166, ECF No. 1-1). Special Agent Dale Wengler submitted an affidavit in support of the application

for the warrant. *See* Elation Aff.; *Franks* Mot. 2. The affidavit contained the following statement:

> On June 16, 2022, the State of Maine Board of Osteopathic Licensure [(the "**Board**")] provided a letter to NORRIS notifying her that, after receiving a copy of Walmart's notice letter to NORRIS, it had independently reviewed five patients' records from NORRIS's office. The Board of Osteopathic Licensure determined that three of those five patients were on high doses of methadone, with two on benzodiazepines, without any plan to taper those medications, as part of NORRIS's treatment of their drug dependency. The letter specifically cites that NORRIS may be violating the Board's standards for professional conduct and the Board's rules regarding the use of controlled substances in the treatment of pain.

Elation Aff. ¶ 53. Also on September 23, 2022, Judge Wolf issued the warrant (the "**Elation Warrant**") (Docket No. 22-mj-166, ECF No. 2). The Elation Warrant was executed that day, and the Government seized patient records. Warrant Returns (Docket No. 22-mj-166, ECF No. 10).

On October 13, 2022, the Board held a public meeting where it dismissed the complaint against Dr. Norris. *Franks* Mot. Ex. 4, at 93. The next day, the Board's executive secretary sent Dr. Norris a letter informing her of the dismissal. *Franks* Mot. Ex. 3, at 86.

On October 20, 2022, a grand jury returned an indictment charging Dr. Norris with ten counts of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1). Indictment 2 (ECF No. 3).

On October 25, 2022, the Government made another *ex parte* application for a warrant, this time authorizing the search and seizure of information at the Practice, including medical records. App. and Aff. for Search Warrant ("**Practice Aff.**") 37 (Docket No. 22-mj-198, ECF No. 10). Special Agent Wengler submitted another

affidavit in support of the warrant, which contained the same statement regarding the June 16, 2022 letter from the Board to Dr. Norris. Practice Aff. ¶ 59. It did not mention that the Board had dismissed the complaint against Dr. Norris. I issued the warrant (the "**Practice Warrant**") on October 26, 2022 (Docket No. 22-mj-198, ECF No. 2). Authorities executed the warrant that same day, and seized records including patient records, treatment notes, and medical correspondence. Warrant Returns (Docket No. 22-mj-198, ECF No. 5).

On September 7, 2023, the grand jury returned a superseding indictment charging Dr. Norris with seventeen counts of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) ("**Section 841**") and 18 U.S.C. § 2. Superseding Indictment 2 (ECF No. 62). The seventeen counts relate to seventeen prescriptions Dr. Norris allegedly made out across five different patients. *See* Superseding Indictment 2–3.

On September 19, 2023, the Defendant filed a motion to suppress and for a *Franks* hearing, alleging that Special Agent Wengler's affidavits contained material false statements and omissions that vitiated probable cause for the warrants. *Franks* Mot. 6.

On December 8, 2023, I held a telephonic conference with counsel. Minute Entry (ECF No. 102). During this conference, I informed counsel that I planned to hold an evidentiary hearing on the *Franks* motion. I noted that the Government had represented that Special Agent Wengler was unaware of the Board's decision to dismiss its inquiry into the Defendant in October of 2022. I stated that, as the judge

who signed the warrant based on Special Agent Wengler's affidavit, I viewed the *Franks* issue as a fairly close one and believed an evidentiary hearing was necessary so that the affiant could testify directly to his knowledge of the Board's decision.[1] On December 21, 2023, the Government filed its motion to reconsider my decision to hold a *Franks* hearing. Gov't Mot. to Reconsider Ct.'s Order Granting an Evidentiary *Franks* Hr'g ("**Mot. to Reconsider**") 9 (ECF No. 106).

Dr. Norris argues that the motion to reconsider should be denied as untimely or waived. Opp'n to Gov't Mot. to Reconsider Ct.'s Order Granting an Evidentiary *Franks* Hr'g ("**Def.'s Opp'n**") 4 (ECF No. 107). I sidestep the question of timeliness because I deny the motion on the merits.

## DISCUSSION

In its motion for reconsideration, the Government contends that a *Franks* hearing requires certain findings that are not currently on the record. Mot. to Reconsider 1. It bases its argument on the third ground for reconsideration, that the "decision was based on a manifest error of law or was clearly unjust." *See* Mot. to

---

[1]     In her motion for the *Franks* hearing, the Defendant also listed three other alleged false statements that Special Agent Wengler made. First, she said that the statement that the Board "determined" that there were concerns with the prescriptions for three of five patients "as part of [Dr. Norris's] treatment of the drug dependency" was false because the Board was only investigating Dr. Norris so it had not "determined" anything and the Board's June letter did not state that the patients were treated for their drug dependency. Def.'s Mot. to Suppress for Violation of Fourth Amendment and for a "Franks" Hr'g ("***Franks* Mot.**") 7 (ECF No. 73). Second, the Defendant argues that the affiant omitted the fact that Dr. Norris had a right to respond in thirty days. *Franks* Mot. 7. Third, the Defendant takes issue with the fact that the affiant referenced orders the Court issued for the use and disclosure of patient records without specifying the scope and limitations of the orders and the regulations pursuant to which the orders were issued. *Franks* Mot. 9. I focus on where I told the parties I had concerns—the omission of the fact that the State of Maine Board of Osteopathic medicine dismissed a similar complaint against Dr. Norris.

Reconsider 3. The Government maintains that the Defendant has not come close to meeting her burden that (1) the affiant intentionally or recklessly made a materially false statement or omission, and (2) that the statement was necessary to a finding of probable cause. Mot. to Reconsider 2.

The Fourth Amendment requires a warrant application to contain sufficient information to permit the issuing official to decide whether there is a fair probability that a crime has been committed given the circumstances in the application. *United States v. Barbosa*, 896 F.3d 60, 67 (1st Cir. 2018). "An application supporting a warrant is presumptively valid," but under certain conditions, a defendant can rebut the presumption and challenge the application at a pretrial hearing. *Id.* (internal quotation marks omitted). This is called a *Franks* hearing after the case that established the right to such a hearing—*Franks v. Delaware*, 438 U.S. 154 (1978).

But before she can have that evidentiary hearing, a defendant must make a threshold showing, which is a high bar given a warrant's presumptive validity. *United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012); *Barbosa*, 896 F.3d at 68; *United States v. Tzannos*, 460 F.3d 128, 136 (1st Cir. 2006). She must "make a substantial showing that the affiant intentionally or with reckless disregard for the truth included a false statement in the affidavit, which statement was necessary to the finding of probable cause." *United States v. Tanguay*, 787 F.3d 44, 48 (1st Cir. 2015). "Failure to make a showing on either element dooms a party's hearing request. *Rigaud*, 684 F.3d at 173. A substantial preliminary showing does not require "clear proof." *United States v. Hohman*, No. 21-30007-MGM, 2023 WL 5650113, at *7 (D.

Mass. Aug. 31, 2023) (citing *United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007); *United States v. Brown*, 298 F.3d 392, 408 (5th Cir. 2002); *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005)).

Alternatively, a defendant can get a *Franks* hearing based on a material omission from the affidavit if she makes a substantial showing that the information was omitted intentionally or recklessly and that, if included in the affidavit, it would have been "sufficient to vitiate probable cause." *Id*. at *5; *see also Rigaud*, 684 F.3d at 173. "Recklessness may be inferred from circumstances evincing obvious reasons to doubt the veracity of the allegations." *United States v. Arias*, 848 F.3d 504, 511 (1st Cir. 2017) (quoting *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002)). "Recklessness may be inferred directly from the fact of omission only if 'the omitted information was critical to the probable cause determination.' " *Tanguay*, 787 F.3d at 49 (quoting *Burke v. Town of Walpole*, 405 F.3d 66, 81 (1st Cir. 2005)). "Negligent omissions—even . . . of highly probative information—do not satisfy this strict standard." *Id*. In general, an officer planning to apply for a warrant does not have a duty to investigate fully, but a *Franks* hearing may arise out of an officer's failure to include facts not known to him in a warrant application when there were "obvious reasons" to doubt the truth of the allegations. *Id*. at 54.

As I stated during the December conference with counsel, the main sticking point is Special Agent Wengler's omission of updated information regarding the Board investigation in his October 25, 2022 affidavit in support of the warrant. The Government first argues that the "defendant failed to proffer any evidence or allege

any facts demonstrating that the affiant acted recklessly or intentionally" in omitting the information about the Board's dismissal of the complaint against Dr. Noris. Mot. to Reconsider 4. Not so. The Defendant proffered that the Board dismissed the complaint at a noticed public meeting on October 13, 2023. *Franks* Mot. 8. She submitted an affidavit describing the process of Board meetings from the Executive Director of the Maine Osteopathic Association, Amanda Mahan, who attended the October meeting. *Franks* Mot. Ex. 4, at 93. Ms. Mahan explained, "[t]he date and time of Board public meetings are noticed to the public on the Board's website in advance of the meetings and include the Agenda for the meeting. The minutes for each public meeting are also made available to the public on the Board's website." *Franks* Mot. Ex. 4, at 93.

In its opposition to the motion to suppress, the Government tried to poke holes in this evidence. It pointed out that Ms. Mahan's affidavit does not mention when the meeting minutes became public and only cites to the Defendant's case number, not her name. Gov't's Opp'n to Def.'s Mot. to Suppress for Violation of Fourth Amendment and for a "Franks" Hr'g ("**Gov't's Opp'n**") 11 (ECF No. 85). The Government presumably had access to the Defendant's case number, so that should have posed no hurdle to the affiant. And the public Agenda released before the meeting would have included Defendant's case number, so the Government could have known, before the October 13, 2022 meeting, that the Defendant's case was going to be discussed.[2] The

---

[2]     It is possible that the minutes were not made publicly available in the twelve days between the Board's meeting and the application for the Practice Warrant. But the Defendant does not need to

Government also notes that the October 13 meeting occurred "just days prior to the submission of the underlying warrant application." Gov't's Opp'n 11. However, what the Government calls "just days" was a gap of almost two weeks, and Ms. Mahan explained that public notice and the Agenda were issued *before* the meeting.

Given the clear public notice, and given that the Government was aware of the investigation and no doubt interested in the outcome, there are reasons to question whether the affiant intentionally or recklessly omitted the fact that the outcome of the Board's investigation was favorable to the Defendant. *See Arias*, 848 F.3d at 511. And while failure to investigate further is not evidence of an affiant's recklessness in most cases, *see United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002), that the affiant here submitted the affidavit for the Practice Warrant with an outdated, copied and pasted statement about the Board investigation (and other matters) a month after the Elation Warrant is troubling. There may be a good explanation for the omission, but I would like to hear from the affiant directly so that I can better assess the situation.

The Government also attacks the second prong of the *Franks* test—whether the Defendant has made a substantial showing that the inclusion of the omitted information about the Board dismissing the case against Dr. Norris would have been sufficient to vitiate probable cause. The Government points to four independent indicia of criminality contained in the affidavit: (1) Walmart's nationwide refusal to

---

provide "clear proof" to be able to make a substantial showing of the affiant's recklessness. *See United States v. Hohman*, No. 21-30007-MGM, 2023 WL 5650113, at *7 (D. Mass. Aug. 31, 2023).

fill the Defendant's prescriptions; (2) an analysis of Defendant's claims data showing her to be in the top percentiles for "a number of outlier behaviors indicative of illegal prescribing," including being in the 99th percentile among all prescribers in the country for total morphine milligram equivalent ("**MME**") prescribed per patient; (3) a review by the Uniform Program Integrity Contractor for New England for the Center for Medicaid Services for eleven patients that found that the Defendant over-prescribed opioids and prescribed opioids while not medically necessary; and (4) a review by an expert clinician who found that Dr. Norris placed her patients at "extreme risk of overdose" based on concurrent prescriptions of methadone with Oxycodone and narcotic pain killers with a benzodiazepine.[3] Mot. to Reconsider 4–7.

Although the Government asserts that these facts were "independent," the omitted information about the outcome of the Board investigation calls them into question. It undermines the Walmart evidence, because the Board's investigation of Dr. Norris was initiated by a letter from Walmart regarding its refusal to fulfill her prescriptions. *Franks* Mot. 8. Indeed, the record before me suggests that the Board's investigation was closely tied to Walmart's refusal to fulfill prescriptions, and that after reviewing this evidence, the "Board voted unanimously to dismiss the complaint as it did not rise to a level which would warrant further review or action against [Dr. Norris's] license." *Franks* Mot. Ex. 3, at 86. The omitted information regarding the Board's dismissal of the Complaint also casts a shadow over the claims data and the

---

[3]     The affidavit also included a section describing concerns the Government's retained expert held about Dr. Norris's prescribing practices. *See* Practice Aff. ¶¶ 81–84.

UPIC's and experts' analyses. The Board members dismissed the complaint and "expressed thanks" for Dr. Norris's "thorough and compassionate care" for her patients. *Franks* Mot. Ex. 3, at 86. Especially because state medical standards are relevant to determining whether a physician violated Section 841, *see Gonzales v. Oregon*, 546 U.S. 243, 270–71 (2006); *United States v. Sabean*, No. 2:15-cr-175-GZS 2016 WL 6088276, at *1 (D. Me. Oct. 18, 2016); *Orsua v. DEA*, No. 22-3132, 2023 WL 3886403, at *3 (6th Cir. June 8, 2023), the omitted information regarding the Board's dismissal of the complaint weakens the other evidence in the affidavit.

If the omitted facts had been included in the affidavit it would have certainly raised questions. As I noted during the call in December, I consider this to be a close issue. I cannot say that the omitted evidence would have vitiated probable cause without a better understanding of the scope of the Board's investigation and the meaning of its conclusion. However, on the record before me, the Defendant has made the substantial showing required for a *Franks* hearing.

## CONCLUSION

For the reasons stated above, I **DENY** the Government's motion to reconsider (ECF No. 106).


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 12th day of January, 2024.