## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Docket No. 2:22-cr-00132-NT |
| | ) | |
| MERIDETH C. NORRIS, D.O., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON THE DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND TO VACATE THE VERDICT AND DISMISS THE SUPERSEDING INDICTMENT BASED ON UNCONSTITUTIONAL VAGUENESS

The Defendant Merideth C. Norris, D.O. ("**Dr. Norris**" or "**the Defendant**") was convicted by a jury on June 21, 2024 of illegally distributing controlled substances in violation of 21 U.S.C. § 841(a)(1) ("**Section 841(a)**") and 18 U.S.C. § 2 (ECF Nos. 284, 286). Two motions are before me. The Defendant moves for acquittal (ECF No. 302) and moves to vacate the conviction and dismiss the superseding indictment based on unconstitutional vagueness (ECF No. 303). For the following reasons, both motions are **DENIED**.

## DISCUSSION

### I.    Motion for Acquittal

#### A.    Legal Standard

To succeed on a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, a defendant must show that "the evidence, viewed in the light most favorable to the government, could not have persuaded any trier of fact of the defendant's guilt beyond a reasonable doubt." *United States v. Merlino*, 592 F.3d 22,

29 (1st Cir. 2010) (internal citation omitted). "The court need not be convinced that the verdict is correct; it need only be satisfied that the verdict is supported by the record." *United States v. Kilmartin*, 944 F.3d 315, 325 (1st Cir. 2019). The First Circuit has "described this standard of review as 'formidable.'" *United States v. Lipscomb*, 539 F.3d 32, 40 (1st Cir. 2008) (quoting *United States v. Loder*, 23 F.3d 586, 589 (1st Cir. 1994)).

In considering such a motion, I may not "weigh the evidence or make any credibility judgments, as those are left to the jury." *Merlino*, 592 F.3d at 29 (internal citation omitted). Instead, I "examine the evidence—direct and circumstantial—as well as all plausible inferences drawn therefrom, in the light most favorable to the verdict, and determine whether a rational fact finder could conclude beyond a reasonable doubt that the defendant committed the charged crime." *United States v. Meléndez-González*, 892 F.3d 9, 17 (1st Cir. 2018) (internal citation omitted). It "does the defendant no good" to "rais[e] a plausible theory of innocence" because "the issue is not whether a jury rationally could have acquitted but whether it rationally could have found guilt beyond a reasonable doubt." *United States v. Tan*, 674 F.3d 103, 107 (1st Cir. 2012). That said, I "must reverse a conviction" where the evidence, "viewed in the light most favorable to the verdict," supports "an equal or nearly equal theory of guilt and a theory of innocence." *United States v. Soler-Montalvo*, 44 F.4th 1, 10–11 (1st Cir. 2022) (internal citation omitted).

## B.    Section 841(a)'s Knowledge Requirement

The Defendant asserts that the Government "presented no evidence of Dr. Norris'[s] subjective intent to commit the crime beyond a reasonable doubt." Dr.

Merideth Norris' Mot. for J. of Acquittal ("**Mot. for Acquittal**") 12 (ECF No. 302). In other words, she challenges only whether the Government proved Section 841(a)'s mental state element.

Section 841(a) makes it a crime to "knowingly or intentionally" distribute a controlled substance, "[e]xcept as authorized." 21 U.S.C. § 841(a)(1). The statute does not itself define when a distribution is "authorized," but the applicable regulation states that a prescription is authorized if issued: (1) "for a legitimate medical purpose"; and (2) "by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). The Supreme Court has held that Section 841(a) requires the government to prove "beyond a reasonable doubt" that the defendant subjectively "knew" or "intended" to issue prescriptions "in an unauthorized manner." *Ruan v. United States*, 597 U.S. 450, 467–68 (2022). "Whether the defendant had such knowledge or intention turns on 'objective criteria' about usual professional practice, such as '*accepted* limits' on prescribing." *United States v. Suetholz*, No. 23-5613, 2024 WL 4182903, at *3 (6th Cir. Sept. 13, 2024) (quoting *Ruan*, 597 U.S. at 467). *See also United States v. Bauer*, 82 F.4th 522, 527 (6th Cir. 2023) ("[U]nauthorized distribution includes as an element that the defendant subjectively knew the distribution was unauthorized; . . . it is not sufficient that the distribution was objectively unauthorized.") (citing *Ruan*, 597 U.S. 450).

To establish a Section 841(a) violation, "[t]he Government, of course, can prove knowledge of a lack of authorization through circumstantial evidence." *Ruan*, 597 U.S. at 467. Courts in other jurisdictions have upheld Section 841(a) convictions

based on circumstantial evidence such as: (1) a doctor's failure to conduct adequate physical exams, establish diagnoses, consider "red flags," or attempt alternative treatment options; (2) evidence that a doctor "ignored signs of addiction" or "failed to enforce 'compliance measures' on [her] patients"; and (3) "expert testimony describing how far the defendant's practices deviated from the mainstream." *Suetholz*, 2024 WL 4182903, at \*3–4 (internal citations omitted).[1]

"[T]he more unreasonable a defendant's asserted beliefs or misunderstandings are, especially as measured against objective criteria, the more likely the jury will find that the Government has carried its burden of proving knowledge." *Ruan*, 597 U.S. at 467 (cleaned up). While "a physician's failure to adhere to an applicable standard of care cannot, by itself, form the basis for a conviction under Section 841(a), such a failure is undeniably relevant to that determination." *United States v. Sabean*, 885 F.3d 27, 45 (1st Cir. 2018); *see also id.* ("[T]he further that a defendant strays

---

[1]     In numerous cases from other jurisdictions, appellate courts have upheld doctors' Section 841(a) convictions based in part on evidence that the doctors deviated from objective standards of medical practice, which served as circumstantial evidence of their knowing misconduct. I note that in many of those cases, the record also contained evidence of egregious behaviors not present in Dr. Norris's case, including operating "pill mills," prescribing controlled substances for profit rather than medical need, or issuing controlled substances to patients in exchange for sex. *See, e.g.*, *United States v. Bynes*, No. 20-10673, 2024 WL 4834932, at \*5 (11th Cir. Nov. 20, 2024) (government expert concluded the doctor was issuing unlawful prescriptions based "in part" on the fact that the doctor "was having sex with his patients"); *United States v. Lamartiniere*, 100 F.4th 625, 656 (5th Cir. 2024) ("two undercover agents with vague allegations of prior injuries, no medical records, no previous diagnoses, and admissions of prior illegal drug use, were able to get prescriptions . . . for progressively more potent controlled substances"); *United States v. Hargrave*, No. 22-4711, 2024 WL 2953131, at \*2 (4th Cir. June 12, 2024) (patient testified the doctor "wrote her prescriptions for controlled substances and gave her cash in exchange for sex"); *United States v. Bauer*, 82 F.4th 522, 529 (6th Cir. 2023) (doctor "failed to adequately examine the patients, establish diagnoses, consider red flags, or attempt more conservative treatment options—all in violation of the standard of care espoused by the Government's expert, Dr. King"); *United States v. Mencia*, No. 18-13967, 2022 WL 17336503, at \*8 (11th Cir. Nov. 30, 2022) (doctor instructed his medical assistants "to fill in patient charts, not based on a patient's actual data, but based on the 'data that would justify the reason why the patient would be prescribed the drugs' ").

from accepted legal duties, the more likely that a factfinder will find him to be in knowing disregard of those duties.").

## C.    Evidence that the Defendant "Knew" or "Intended" to Issue Unauthorized Prescriptions

Viewing the evidence in the light most favorable to the Government, I find there was sufficient circumstantial evidence to show that the Defendant knew her prescriptions were unauthorized. The Government presented as their expert Dr. Timothy E. King, a medical doctor with decades of experience and board certifications in pain management, anesthesiology, and addiction medicine.

Dr. King testified based on reviewing the relevant patients' medical records that Dr. Norris had, among other things: (1) conducted inadequate physical exams and established insufficient diagnoses before prescribing controlled substances; (2) failed to modify patients' prescriptions even when she knew they were using unprescribed drugs and diverting their medications, and even after one patient attempted suicide; (3) prescribed controlled substances at frequencies and dosages above recommended levels; (4) prescribed dangerous combinations of drugs; and (5) failed to make changes after receiving warning letters from insurance companies and pharmacists about her prescribing practices. The jury was permitted to credit Dr. King's testimony that the Defendant's prescribing behaviors departed from objective standards of professional practice. And it was permitted to treat that testimony as circumstantial evidence that Dr. Norris knew that her conduct was unauthorized. *See Ruan*, 597 U.S. at 467.

### D.    The Defendant's Counterarguments

I briefly address two of the Defendant's counterarguments, which both fall short. First, the Defendant insists that the Government's evidence did not prove her subjective intent but rather supported the theory, insufficient under *Ruan*, that "a reasonable doctor would not have done as Dr. Norris did." Mot. for Acquittal 6; *id.* at 16 (asserting that the Government proved only that the Defendant's behavior deviated from that "of a hypothetical 'reasonable' doctor"). This argument is weakened by specific instructions given to the jury that clearly stated and defined the Government's burden to prove the Defendant's knowledge or intent. For example, the jury was instructed: (1) that it could not convict the Defendant unless the Government satisfied its burden of proving that the Defendant "knew that her conduct was unauthorized or . . . intended to act in an unauthorized manner"; (2) that it could infer the Defendant's knowledge if it found "she deliberately closed her eyes to a fact that otherwise would have been obvious"; and (3) that "[i]n determining whether Dr. Norris acted knowingly or intentionally," it could consider "whether she acted in good faith," meaning "in accordance with what she honestly believed was a legitimate medical need in the usual course of professional practice." Tr. of Proceedings ("**Trial Tr.**") 1506–08 (ECF No. 299).

Second, the Defendant asserts that her treatment decisions were consistent with a "harm reduction philosophy" that entails "continuing to work with patients who sometimes exhibit behaviors or actions that are risky" on the theory that discontinuing treatment would be "*more risky*." Mot. for Acquittal 57. This argument fails because "a doctor can both subjectively believe that [s]he is acting to help [her]

6

patients and know that [s]he was not 'observing generally accepted medical practices.'" *Suetholtz*, 2024 WL 4182903, at *4 (quoting *United States v. Moore*, 423 U.S. 122, 126 (1975)). Doctors cannot "escape liability by claiming idiosyncratic views about their prescribing authority." *Ruan*, 597 U.S. at 466. *Cf. United States v. Anderson*, 67 F.4th 755, 769–70 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 552 (2024) (rejecting a doctor's argument that he "believed" he was treating his patients' "legitimate" medical needs, and reasoning that "a jury could conclude that he was not acting in 'good faith and with all due care' when he prescribed opioids to patients who were 'merely faking symptoms'").

Given the "formidable" standard that applies to a motion for acquittal, I find that a rational jury could have concluded beyond a reasonable doubt that the Defendant knew her prescriptions were outside the scope of her usual professional practice and without a legitimate medical purpose. Accordingly, the motion fails.

## II.    Motion to Vacate and Dismiss Based on Unconstitutional Vagueness

I now turn to the Defendant's motion to vacate the verdict and dismiss the superseding indictment. That motion asserts that "as applied," Section 841(a) violates constitutional due process by giving "insufficient . . . notice of what conduct is prohibited." Def.'s Mot. to Vacate Verdict and Dismiss for Violation of Due Process Clause for Vagueness ("**Mot. to Vacate**") 4, 6 (ECF No. 303).[2] Specifically, the

---

[2]    The Defendant states that her post-trial motion to vacate the verdict "renews" the void-for-vagueness arguments made in her pretrial motion to dismiss the superseding indictment. Def.'s Mot. to Vacate Verdict and Dismiss for Violation of Due Process Clause for Vagueness 1 (ECF No. 303); *see* Def.'s Mot. to Dismiss (Vagueness) (ECF No. 65). I denied the pretrial motion without prejudice after determining that the vagueness argument required "further factual development." Order on Def.'s Mots. to Dismiss 6 (ECF No. 109).

Defendant argues that the phrases "in the usual course of . . . professional practice" and "legitimate medical purpose," as used in 21 C.F.R. § 1306.04(a), do not clearly define when a doctor is or is not "authorized" to distribute controlled substances. Mot. to Vacate 7–8 (calling these terms "too vague to give Dr. Norris notice of what actions were illegal").

### A.    Legal Standard

A criminal statute violates Fifth Amendment Due Process if it is " 'so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.' " *United States v. Abreu*, 106 F.4th 1, 17–18 (1st Cir. 2024) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)), *cert. denied*, No. 24-5484, 2024 WL 4529864 (U.S. Oct. 21, 2024). A statute is void for lack of notice "only if it prohibits an act in terms so uncertain that persons of average intelligence would have no choice but to guess at its meaning and modes of application." *Frese v. Formella*, 53 F.4th 1, 6 (1st Cir. 2022) (cleaned up and internal citation omitted), *cert. denied*, 144 S. Ct. 72 (2023). It is void for "arbitrary enforcement" if it "fails to 'set reasonably clear guidelines for law enforcement officials and triers of fact.' " *Id.* at 7.[3]

"The vagueness doctrine is primarily concerned with whether the language of a legal provision is sufficiently clear." *United States v. Facteau*, 89 F.4th 1, 34 (1st

---

[3]    *Accord United States v. Facteau*, 89 F.4th 1, 34 (1st Cir. 2023), *cert. denied*, No. 23-1016, 2024 WL 4426540 (U.S. Oct. 7, 2024) (vagueness challenges require proving that "as a textual matter, the law lacked sufficient clarity to apprise [defendants] of when they would be criminally liable"); *see, e.g.*, *United States v. Abreu*, 106 F.4th 1, 18 (1st Cir. 2024), *cert. denied*, No. 24-5484, 2024 WL 4529864 (U.S. Oct. 21, 2024) (statute was not unconstitutionally vague because "[i]t would be clear to the ordinary individual" that the relevant behavior was proscribed by the challenged provision).

Cir. 2023), *cert. denied*, No. 23-1016, 2024 WL 4426540 (U.S. Oct. 7, 2024). A statute or regulation is not unconstitutionally vague merely because it "requires interpretation." *United States v. Lachman*, 387 F.3d 42, 56 (1st Cir. 2004). Indefinite terms may "take on definiteness and clarity" if they are "placed in context, as part of a rule directed to a discrete professional group." *In re Bithoney*, 486 F.2d 319, 324 (1st Cir. 1973).

In the due process context, courts evaluate a law's vagueness "as applied" to the specific facts at issue by asking whether the particular defendant before the court "'*in fact* had fair notice that the statute and regulations proscribed [her] conduct.'" *United States v. Wu*, 711 F.3d 1, 15 (1st Cir. 2013) (quoting *United States v. Hsu,* 364 F.3d 192, 196 (4th Cir. 2004)). *See, e.g., FERC v. Silkman*, 177 F. Supp. 3d 683, 704 (D. Mass. 2016) (stating that a rule would not be void for vagueness "if, given the information available to it, [the defendant] should have been aware that its conduct . . . could be deemed [a violation]").

## B.  Courts Have "Universally" Rejected Similar Challenges

Before considering the Defendant's vagueness challenge as applied to the specific facts of her case, I note that courts "'have universally found that § 841(a)(1) is not unconstitutionally vague as applied to medical professionals.'" *United States v. Hess*, No. 1:23-cr-18, 2024 WL 100284, at *2 (N.D.W. Va. Jan. 9, 2024) (internal citation omitted); *accord United States v. Robinson*, 253 F. Supp. 3d 1, 3 (D.D.C. 2017) (collecting cases rejecting Section 841(a) vagueness challenges). These courts have reasoned that the regulatory terms "legitimate medical purpose" and "usual course of his professional practice," 21 C.F.R. § 1306.04(a), "do not require . . . definitions" and

9

are "reasonably understandable by a physician." *United States v. Heaton*, 59 F.4th 1226, 1247 (11th Cir. 2023).[4]

Moreover, though the Defendant cites *Ruan v. United States*, 597 U.S. 450 (2022), for the proposition that Section 841(a)'s authorization clause is "ambiguous," Mot. to Vacate 4–5, courts have consistently found that *Ruan* in fact "weakens, rather than strengthens" vagueness challenges to this provision. *See, e.g., United States v. Taylor*, No. 621-cr-00013-GFVT-HAI, 2022 WL 4227510, at *3 (E.D. Ky. Sept. 13, 2022). This is because *Ruan*—by requiring the government to prove a defendant *knowingly* issued unauthorized prescriptions—necessarily undermines doctors' arguments that they lacked fair notice that their conduct violated Section 841(a), as needed to support a vagueness claim. *Accord United States v. Okafor*, No. cr-23-116-JDB, 2024 WL 4263928, at *3 (D.D.C. Sept. 23, 2024) (stating that *Ruan* makes Section 841(a) "particularly ill-suited for an as-applied vagueness challenge").[5]

---

[4]    *Accord United States v. Hess*, No. 1:23-cr-18, 2024 WL 100284, at *2 (N.D.W. Va. Jan. 9, 2024) (stating that Section 841(a) provides "clear notice" of the proscribed conduct even without providing "[e]xplicit definitions"); *Mencia*, 2022 WL 17336503, at *13 (reasoning that the phrase "course of his professional practice" is not unconstitutionally vague "because it is a necessarily fact-intensive inquiry" that requires physicians to "exercise their professional judgment"); *United States v. Quinones*, 536 F. Supp. 2d 267, 274 (E.D.N.Y. 2008) (finding "usual course of . . . professional practice" to have "an objective meaning that prevents arbitrary prosecution and conviction" by requiring "the government . . . to prove, and the jury . . . to determine, what the medical profession would generally do in the circumstances").

[5]    *See also Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982) ("[A] scienter requirement may mitigate a law's vagueness . . . ."); *United States v. Wu*, 711 F.3d 1, 15 (1st Cir. 2013) ("Where a statute 'explicit[ly] provi[des] that a criminal violation of its terms must be "willful,"' the void-for-vagueness doctrine is especially inapposite . . . .") (internal citation omitted); *United States v. Nieves-Castaño*, 480 F.3d 597, 603 (1st Cir. 2007) (rejecting a due process challenge where a statute's "scienter requirement ameliorate[d] any vagueness concerns").

### C.    Evidence of the Defendant's Knowledge Disproves Her As-Applied Vagueness Challenge

I now consider whether Section 841(a) is unconstitutionally vague as applied to the specific facts of the Defendant's case. The Defendant tries to distinguish the wall of cases that have consistently denied Section 841(a) vagueness challenges by noting that they involved conduct that was "clearly illegal and animated with criminal intent," such as doctors operating pill mills, prescribing opiates to patients they never met in person, and over-prescribing controlled substances for profit. Dr. M. Norris' Reply to Resp. in Opp'n to Mot. to Vacate the Verdict and Dismiss for Violation of Due Process Clause for Vagueness ("**Reply in Supp. of Mot. to Vacate**") 4–6 (ECF No. 310) (citations omitted). The Defendant says that in her case, by contrast, the evidence shows she was "a caring physician who spent inordinate time caring for difficult patients, not thoughtlessly issuing prescriptions in order to generate a profit." Reply in Supp. of Mot. to Vacate 6.

But as detailed above, the Government presented evidence that the Defendant deviated from standard practices in pain management medicine. In convicting the Defendant, the jury concluded that the Government had proved beyond a reasonable doubt that the Defendant did not merely act negligently, recklessly, or mistakenly, but rather that she *knowingly* or *intentionally* distributed controlled substances without authorization. *See* Trial Tr. 1506–08; Jury Verdict (ECF No. 286). The jury's conclusion that the Defendant knew or intended to issue unauthorized prescriptions is at odds with the Defendant's argument that she did not "in fact ha[ve] fair notice"

about how to follow the law, as needed to prevail on her vagueness claim. *Wu*, 711 F.3d at 15 (internal citation and quotation marks omitted).

## CONCLUSION

For the reasons above, I **DENY** the Defendant's motion for acquittal (ECF No. 302) and **DENY** the motion to vacate the conviction and dismiss the superseding indictment (ECF No. 303).

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 12th day of December, 2024.